# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: January 25, 2022

```
*   *   *   *   *   *   *   *   *   *   *   *
```

|  |  |
|---|---|
| AMBER BOB, *on behalf of her minor child*, G.B., | UNPUBLISHED |
| Petitioner, | No. 20-931V |
| v. | Special Master Gowen |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Attorneys' Fees and Costs; Reasonable Basis; Good Faith. |
| Respondent. | |

```
*   *   *   *   *   *   *   *   *   *   *   *
```

*Andrew D. Downing,* Van Cott & Talamante, PLLC, Phoenix, AZ, for petitioner.
*Voris. E. Johnson,* U.S. Department of Justice, Washington, D.C., for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On November 15, 2021, Amber Bob, on behalf of her minor child, G.B. ("petitioner"), filed an application for final attorneys' fees and costs. Petitioner's Fee Application ("Fee App.") (ECF No. 34). For the reasons discussed below, I **GRANT** petitioner's motion and find that a reasonable final award of attorneys' fees and costs is $12,933.00.

## I.    Procedural History

On July 30, 2020, petitioner on behalf of G.B., filed a petition pursuant to the National Vaccine Injury Compensation Program.[2] Petition (ECF No. 1). Petitioner alleged that G.B. suffered from a severe adverse reaction, including Postural tachycardia syndrome ("POTS") as a result of receiving the Gardasil human papillomavirus ("HPV") vaccines on August 3, 2017 and

---

[1] Pursuant to the E-Government Act of 2002, see 44 U.S.C. § 3501 note (2012), **because this opinion contains a reasoned explanation for the action in this case, I intend to post it on the website of the United States Court of Federal Claims.** The Court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. Before the opinion is posted on the Court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). An objecting party must provide the Court with a proposed redacted version of the opinion. *Id.* **If neither party files a motion for redaction within 14 days, the opinion will be posted on the Court's website without any changes.** *Id.*

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended 42 U.S.C. §§ 300aa-10 to 34 (2012) (hereinafter "Vaccine Act" or "the Act"). Hereinafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

March 5, 2018.  Petition at Preamble. On October 1, 2020, petitioner filed additional medical records and requested additional time to file the PAR Medical History Questionnaire, along with the statement of completion.  *See* Petitioner's ("Pet.") Motion ("Mot.") for Extension of Time (ECF No. 11).  On November 6, 2020, petitioner filed additional medical records.  Notice of Filing (ECF No. 12).  Petitioner again asked for an extension of time to file the PAR Medical History Questionnaire and a statement of completion.  On December 7, 2020, petitioner filed the PAR Medical History Questionnaire and the statement of completion. (ECF Nos. 15 & 16).

The above captioned case was reassigned to my docket on January 15, 2021. (ECF No. 18). The same day I ordered the respondent to file an initial status report by March 15, 2021. (ECF No. 19).  Respondent submitted a status report on March 16, 2021, outlining his initial review of the case which was that petitioner alleged an injury of POTS but did not meet the diagnostic criteria for POTS. Respondent's ("Resp.") Status Report ("Rept.") (ECF No. 22).  The respondent requested additional medical records.  *Id.* The same day I ordered petitioner to file the requested records and a supplemental statement of completion by May 17, 2021. (ECF No. 23). I additionally ordered petitioner to file an expert report regarding G.B.'s diagnosis and vaccine causation and ordered respondent to file an expert report thereafter. (ECF No. 23).

On March 29, 2021, I issued an order regarding the 240-day notice. (ECF No. 24). Petitioner did not respond to the notice within 30 days, and it was presumed the petitioner intended to continue in the program. *Id.* On June 2, 2021, my law clerk entered an informal remark indicating that she had emailed petitioner twice about the missed deadline to file the requested medical records and supplemental statement of completion. Informal Remark, June 2, 2021.

On June 3, 2021, petitioner filed a motion for extension of time to file all outstanding medical records and a status report for how she wishes to proceed. Pet. Mot. for Extension of Time (ECF No. 25). I granted petitioner's motion, ordering them to file the updated medical records, a supplemental statement of completion, or a status report advising how to proceed by July 6, 2021. Order (NON-PDF), June 4, 2021. On July 7, 2021, petitioner filed another motion for extension to file all outstanding medical records and a status report for how she wishes to proceed. Pet. Mot. (ECF No. 26). I granted petitioner's motion, ordering them to file updated medical records, a supplemental statement of completion, or a status report advising how to proceed by August 5, 2021. Order (NON-PDF), July 7, 2021.

Petitioner did not file the updated records, supplemental statement of completion or a status report indicating how she wished to proceed, instead on July 24, 2021, petitioner filed a motion for a decision dismissing the petition.  Pet. Mot. (ECF No. 27).  Petitioner stated that she has made the choice to "opt out of the Vaccine Program," and that "[S]he wishes to pursue a third-party action in district court against Merck directly."  Pet. Mot. at ¶ 3.  She continued, "[t]his choice should not be viewed in any way that Petitioner does not believe in the merits of her claim or that [G.B.'s] injuries are not a result of Gardasil…..[she] simply needs a judgment from the Vaccine Program so that she may reject said judgment and submit her election to opt out."  *Id.*  Respondent has no objection to petitioner's motion.  *Id.* at ¶ 4.  Petitioner understands that an adverse decision in the Vaccine Program dismissing her petition will result in a judgment against her and that such judgment will end all of her rights in the Vaccine Program.  *Id.* at ¶ 5.

Therefore, petitioner intends to elect to reject the Vaccine Program judgment against her and elect to file a civil action at the appropriate time." *Id.*

On July 26, 2021, I granted petitioner's motion and dismissed the matter for insufficient proof. Decision (ECF No. 28). On July 27, 2021, the parties submitted a joint notice to not seek review (ECF No. 29), and judgment was entered the same day. (ECF No. 30). On July 28, 2021, petitioner filed a notice of election to file a civil action. (ECF No. 31). The public decision was issued on September 1, 2021. (ECF No. 32).

On November 15, 2021, petitioner filed medical literature (ECF No. 33) and a motion for final attorneys' fees and costs. Pet. Fee Mot. (ECF No. 34). Petitioner requested that her attorney be awarded $14,502.00 in attorneys' fees and $431.00 in costs. Pet. Fee Mot. at 10. On November 29, 2021, respondent filed a motion for extension of time to file a response to petitioner's fee application. (ECF No. 35). I granted respondents motion, ordering them to file the response by December 3, 2021. Order (NON-PDF), Nov. 29, 2021. On December 3, 2021, respondent filed a response to petitioners' motion for attorney's fees, opposing petitioners' motion stating that "the claim was not maintained in good faith, and that petitioner has not established a reasonable basis for her claim." Resp. Response at 1 (ECF No. 36). Petitioner filed a reply on December 9, 2021, stating that respondent utilized a flawed legal argument with regards to good faith and reasonable basis when petitioner elected to withdraw the petition to pursue a third party in a civil action. Pet. Reply (ECF No. 37).

This matter is now ripe for adjudication.

## II.    Relevant Medical History of G.B.

G.B. was born on February 9, 2006, and prior to the vaccination at issue G.B. was an overall healthy and active child. Petition at 1. On April 11, 2017, it is noted that G.B. weighed 74 pounds. Pet. Ex. 7 at 70-71. On July 21, 2017, during a follow-up appointment for an arm fracture it is noted that G.B. weighed 80 pounds. Pet. Ex. 5 at 546-548.

On August 16, 2017, when G.B. was eleven years old, he received the first dose of Gardasil during a routine visit to his primary care provider ("PCP"). Pet. Ex. 7 at 70-71. During the visit there were no specific concerns and G.B. weighed 79 pounds. *Id.* After the first dose of Gardasil G.B. had pain and soreness in his right arm at the location of the shot and began to feel overall muscle fatigue, and centralized weakness in his legs within weeks of the vaccination. Petition at 2.

On September 25, 2017, G.B. returned to the PCP with complaints of a cough and vomiting that was present for several weeks with a gradual onset. Pet. Ex. 7 at 73. G.B.'s weight was noted at 77 pounds with a normal physical exam but diagnosed with acute bronchitis and allergic rhinitis. *Id* at 74. He was given amoxicillin and Loratadine for each of the diagnoses respectively. *Id.*

Between September 2017 and February 2018, G.B. was unable to participate meaningfully in sports to his fullest potential due to fatigue, muscle weakness, headaches, and

severe stomach pains. Petition at 3. As a result of these concerns, G.B.'s parents sought medical advice and returned to the PCP on March 5, 2018, with complaints of weight loss and sore throat. Pet. Ex. 7 at 76. The exam was normal and G.B. weighed 73 pounds. *Id*. at 77.  G.B.'s PCP ordered comprehensive labs for further investigations for his weight loss.  *Id*.  The same day G.B. received the second Gardasil vaccine. *Id*. at 78.

On March 12, 2018, G.B. returned to the PCP for a follow-up regarding weight loss and sore throat. Pet. Ex. 7 at 79. G.B. reported "abdominal pain, decreased appetite and headaches, but denies associated swollen ankles, anorexia, bloating, chest pain, constipation, diarrhea, dysphagia, fatigue, fever, heartburn, nausea, night sweats, odynophagia, regurgitation, sleeping difficulty, swallowing difficulty, vomiting and weakness." *Id*. His weight was 71 pounds. *Id*. at 80. The same day, G.B. underwent an electrocardiogram ("ECG") which showed normal sinus bradycardia with a pulse of 51. Pet. Ex. 5 at 566. The same day G.B. underwent a chest x-ray, which was also normal. *Id*. at 568. On March 15, 2018, G.B. underwent an abdominal ultrasounds that was normal and noted, "weight loss 7 pounds in 3 months." Pet. Ex. 5 at 582.

On March 19, 2018, G.B. returned to his PCP and was referred to a pediatric gastroenterologist about abdominal pains and weight loss. Pet. Ex. 7 at 83. On March 23, 2018, G.B. was seen by a pediatric gastroenterologist for abdominal pain and weight loss. Pet. Ex. 4 at 6-7. The history given by G.B.'s father noted that his weight was around 77 pounds in November, and he has lost weight and had stomach and chest pain, along with some issues with food, diarrhea, and constipation. *Id*. at 6. He was diagnosed with gastroesophageal reflux ("GERD") and constipation, and was prescribed Omeprazole, Nizatidine, and Miralax. *Id*. at 7.

G.B. was admitted to the University of Rochester Medical Center on April 7, 2018 with unspecified abdominal pain and weight loss. Pet. Ex. 5 at 596. It was noted that the blood work for celiac, TSH, CRP, ESR, fecal calprotectin, *H. pylori* antigen, and stool studies were normal. *Id*. at 598. He also had a negative upper GI with small bowel follow-through. *Id*. It is noted his weight was 72 pounds. *Id*. The discharge documentation notes that there is "significant autoimmune family history and the patient history of rash and mouth sore raises the concern of possible autoimmune/rheumatologic consideration; however, the patient's inflammatory marks are low." *Id*. at 610.

While hospitalized G.B. saw a nutritionist and a gastrointestinal fellow and conducted a magnetic resonance enterography ("MRE") which showed thick-walled loops of the small bowel in the left upper quadrant. Pet. Ex. 5 at 631. G.B. also saw a pediatric rheumatologist and ordered an antinuclear antibody ("ANA") test which was speckled and therefore she did not recommend any more autoimmune testing. *Id*. at 660, 719.

On April 26, 2018, G.B. underwent an outpatient endoscopy and colonoscopy with normal results. Pet. Ex. 5 at 954-969. On May 18, 2018, G.B. returned to his PCP and it was noted that he had not lost weight and remained active. Pet. Ex. 7 at 88. On May 23, 2018, G.B. received care in an outpatient GI clinic and had a normal physical exam along with a variety of lab tests that all came back normal. Pet. Ex. 5 at 1083-86. On June 18, 2018, G.B. underwent another MRE which showed thickened and enhanced small bowel loops in the left lower quadrant but was otherwise normal. *Id*. at 1165.

On June 20, 2018, G.B. saw an infectious disease specialist who noted that he was "already having some abdominal problems before the 2nd HPV9 immunization, and well after the first; but the parents appear to be focused upon the problems being concurrent with, and perhaps due to, the HPV9 immunizations." Pet. Ex 5 at 1182. G.B. weighed 73 pounds. *Id*. The doctor did not believe that there was an association with the HPV9 vaccination in question "either by timing or by any findings in the national and international post-marketing studies, including US Vaccine Adverse Events Reporting and US Vaccine Safety Datalink." *Id*. at 1186.

On July 31, 2018, G.B. was seen by a pediatric cardiologist and had a normal work up. Pet. Ex. 5 at 1272. The cardiologist did not recommend further testing. *Id*. On December 19, 2018, G.B. underwent a third MRE, which was normal. *Id*. at 1390. In April 2019, G.B. was evaluated for POTS and dysautonomia, but he did not meet the diagnostic criteria for POTS and the diagnosis for dysautonomia was never confirmed. *Id*. at 1407, 1459; Pet Ex. 1 at 1-4.

### III.    Background Regarding HPV Vaccine/Autonomic Dysfunction Litigation in this Program.

Over the last several years, a number of prior decisions from other special masters have addressed and rejected causal theories seeking to link the HPV vaccine to autonomic nervous system dysfunction. *See, e.g., Johnson v. Sec'y of Health & Human Servs.*, No. 14-254V, 2018 WL 2051760 (Fed. Cl. Spec. Mstr. Mar. 23, 2018); *Combs v. Sec'y of Health & Human Servs.*, No.14-878V, 2018 WL 1581672 (Fed. Cl. Spec. Mstr. Feb. 15, 2018); *L.A.M. v. Sec'y of Health & Human Servs.*, No. 11-852V, 2017 WL 527576 (Fed. Cl. Spec. Mstr. Jan. 31, 2017); *Turkopolis v. Sec'y of Health & Human Servs.*, No. 10-351V, 2014 WL 2872215 (Fed. Cl. Spec. Mstr. May 30, 2014).

### IV.    Parties' Contentions

#### A.  Petitioner's Contentions

Petitioner maintains her complaint was brought in good faith and with reasonable basis, pursuant to the statutory requirements for the filing of vaccine related claims in the vaccine program.  Pet. Fee Mot. at 1-2. Petitioner believes the HPV vaccine injured G.B. and opts to bring a suit directly against Merck, instead of going through the program. *Id*. at 3. Petitioner filed an affidavit attesting to her belief that the HPV vaccine harmed her son. Pet. Ex. 8. Petitioner maintains that "good faith" was established because of her honest belief that G.B. suffered an injury due to the vaccine at issue, citing *Di Roma* and *Grice*.  Pet. Mot. at 2; *See Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993); *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996).

Petitioner attached the *Thomas* and *Hoover* decisions to her reply to respondent's opposition to petitioner's motion for final attorneys' fees and costs. Pet. Reply. Ex. A and B; *Thomas v. Sec'y of Health & Human Servs.*, No. 20-886V (Fed. Cl. Spec. Mstr. May 17, 2021); *Hoover v. Sec'y of Health & Human Servs.*, No. 20-1394V (Fed. Cl. Spec. Mstr. Nov. 1, 2021).

The decisions overrule Respondent's objection on the very arguments Respondent makes in this case.

### B.  Respondent's Contentions

Respondent argued that petitioner is not entitled to attorneys' fees and costs because "the claim was not maintained in good faith, and that petitioner has not established a reasonable basis for her claim." Resp. Response at 1. Regarding good faith, respondent emphasized that "one of the primary purposes of the Vaccine Program was to divert litigation over alleged vaccine injuries away from vaccine manufacturers, in order to help ensure a robust supply of vaccines." *Id*. at 10. Respondent contends that petitioner filed this petition only to comply with the statutory requirement to come through the program, exit the program, and then bring a civil suit against Merck on behalf of G.B. *Id*. at 11. Respondent asserted that petitioner "failed to file all of the required medical records and [requested] a decision dismissing her petition based on an incomplete record." *Id*.  He argues that "it is clear that petitioner did not maintain this matter with an intent to litigate her claim."  *Id*. Essentially respondent suggests that petitioner should be required to litigate her case through to conclusion in this court in order to demonstrate good faith and a reasonable basis.

Regarding reasonable basis, respondent stated that "petitioner's claims of a vaccine injury to G.B. are unsubstantiated by the medical records or a medical opinion, and thus, lack a reasonable basis." Resp. Response at 14. Additionally, "the medical records place the onset of petitioner's weight loss several months after his initial Gardasil vaccination and before his second, which timing is not supportive of vaccine causation." *Id*.

In closing, respondent stressed the potential strain on this program if other petitioners followed a similar approach:

> Congress's inclusion of the objective reasonable basis requirement in Section 15(e) of the Act evinces its intent to encourage petitioners' attorneys to perform fundamental due diligence, and pursue claims that have some basis in fact, science, and law. Enforcement of this intent has become all the more important in recent years as the Program faces an ever-burgeoning docket with limited resources. Each petition that is filed carries transaction costs for both the Program and the court. With a statutorily-limited number of Special Masters, the time and resources that must be devoted to disposing of cases with no reasonable basis that are brought before the court lacking good faith – cases which petitioner never intended to litigate before the court nor completely develop the record – inevitably reduces the court's ability to focus on meritorious claims, and delays compensation in those cases.

Resp. Response at 16.

Finally, respondent noted, "[f]inding reasonable basis and good faith only thwarts the program's goals and delays compensation in those cases where petitioners intend to develop the record and litigate their cases on the merits." *Id*. at 16-17.

## V.     Legal Standard

The Vaccine Act permits an award of reasonable attorneys' fees and costs.  §15(e). Section 300aa-15(e)(1) of the Vaccine Act provides that, "[i]f the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." *See* §15(e). Section 300aa-15(e)(1).

Cases in the Vaccine Program can be voluntarily dismissed via Rule 41 of the Rules of the Court of Federal Claims. Fed. Cl. 41(a)(1)(A). Voluntary dismissals do not preclude petitioner from filing a motion for attorneys' fees and costs. I have granted Motions to Dismiss and still awarded attorneys' fees and costs for the work completed to the point of dismissal. *See Morrill v. Sec'y of Health & Hum. Servs.,* No. 18-910V, 2021 WL 4736570 (Fed. Cl. Sept. 8, 2021); *Scarlett v. Sec'y of Health & Hum. Servs.,* No. 19-1555 (Fed. Cl. Nov. 12, 2021).

### A.  Good Faith

Petitioners are entitled to a presumption of good faith as is the government. *Grice v. Sec'y of Health & Human Servs.,* 36 Fed. Cl. 114, 121 (1996). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice,* 36 Fed. Cl. at 121. Thus, so long as Petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993WL 496981, at *1); *Turner v. Sec'y of Health & Human Servs.*, 2007 WL 4410030, at *5. The good faith requirement has been described as "a subjective standard that focuses upon whether petitioner honestly believe he had a legitimate claim for compensation." *Turner,* 2007 WL 4410030, at *5. Black's Law Dictionary explains that bad faith involves conduct indicating "dishonesty or belief, purpose, or motive." Black's Law Dictionary (11th ed. 2019).

### B.  Reasonable Basis

"Reasonable basis," however, is an objective standard. Unlike the good faith inquiry, reasonable basis requires more than just petitioner's belief in her claim. *See Cottingham v. Sec'y of Health & Human Servs.,* 971 F.3d 1337, 1344 (Fed. Cir. 2020); *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017); *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 289 (2014)). "Good faith is a subjective test, satisfied through subjective evidence." *Cottingham*, 971 F.3d at 1344. Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in her claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence – medical records or medical opinion. *Sharp-Roundtree v.Sec'y of Health & Human Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of

Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Human Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Human Servs.*, No.99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding of reasonable basis when petitioner presented only e-mails between her and her attorney).

The Federal Circuit has subsequently held that "failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion." *Cottingham*, 971 F.3d at 1345. While the Court in *Cottingham* did not purport to identify all forms of objective evidence, it stated that "objective medical evidence, including medical records… even where the records provide only circumstantial evidence of causation" can support a showing of reasonable basis. *Id.* at 1346 (citing *Harding v. Sec'y of Health & Human Servs.*, 146 Fed. Cl. 381, 403 (Fed. Cl. 2019)). The *Cottingham* Court also reiterated that the reasonable basis determination is still based on a "totality of the circumstances."

In another recent opinion regarding reasonable basis, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence to support reasonable basis. *See James-Cornelius v. Sec'y of Health & Human Servs.,* 984 F.3d 1374, 1379-81 (Fed. Cir. 2021). The Federal Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis." *Id.* at 1379; (citing *Cottingham,* 971 F.3d at 1346).

On remand Special Master Sanders granted Mr. Downing's attorneys' fees and costs with a minor reduction. *See James-Cornelius on behalf of E.J. v. Sec'y of Health & Hum. Servs.,* No. 17-1616V, 2021 WL 3598347, at *1 (Fed. Cl. July 27, 2021). The facts of the case and the procedural history of dismissal to pursue tort litigation are the same as the present case. Regarding medical evidence, "[t]he Federal Circuit has made a determination of law regarding what is sufficient to constitute "objective" evidence in the context of a reasonable basis analysis. Indeed, it found that multiple pieces of evidence in the record in this case, especially when taken together, constitute objective evidence." *Id.* at 2; (citing *James-Cornelius v. Sec'y of Health & Human Servs.,* 984 F.3d 1374, 1379-81 (Fed. Cir. 2021)). Regarding affidavits, "[t]he Federal Circuit explained that 'the patient's or a parent's testimony may be the best, or only, direct evidence of medical symptoms or events.' *Id.* The Federal Circuit "reject[ed] the Special Master's broad pronouncement that petitioners' affidavits are categorically 'not objective' for purposes of evaluating reasonable basis[ ]" and held that a petitioner's 'medical records may [ ] serve as important corroborating evidence for evaluating testimony's credibility[.]" *Id.* at 3; (citing *James-Cornelius v. Sec'y of Health & Human Servs.,* 984 F.3d 1374, 1379-81 (Fed. Cir. 2021)).

Recently in the Vaccine Compensation Program there have been a number of HPV/autonomic dysfunction cases that have been presented by Mr. Andrew Downing, the same counsel who represents petitioner in this case. Mr. Downing began resolving some HPV related cases via motion to dismiss, explaining that the petitioners in those cases intended to reject the

resulting judgment and pursue tort remedies directly against the vaccine manufacturer. *See, e.g., Wagner on behalf of S.W. v. Sec'y of Health & Hum. Servs.,* No. 19-188V, 2020 WL 6554930, at *1 (Fed. Cl. Oct. 14, 2020); *Otto v. Sec'y of Health & Human Servs.*, No. 16-1144V, 2020 WL 4719285 (Fed. Cl. Spec. Mstr. June 17, 2020); *McElerney v. Sec'y of Health & Human Servs.,* No. 16-1540V, 2020 WL 4938429, at *1 (Fed. Cl. Spec. Mstr. July 28, 2020);

Good faith and reasonable basis were found in all of these cases, under similar factual and procedural conditions. *See, e.g., Wagner v. Sec'y of Health & Hum. Servs.,* No. 19-188V, 2021 WL 1120955, at *1 (Fed. Cl. Feb. 11, 2021); *Otto v. Sec'y of Health & Human Servs.*, No. 16-1144V, (Fed. Cl. Spec. Mstr. July 24, 2020); *McElerney v. Sec'y of Health & Human Servs.,* No. 16-1540V, (Fed. Cl. Spec. Mstr. Dec. 15, 2020);

## VI.   Discussion

### A.  Good Faith

The undersigned agrees with respondent that one of the purposes of the Vaccine Act is to divert vaccine litigation into the Program providing immunity to the vaccine manufacturers. However, the undersigned disagrees that petitioner's actions run afoul of the Act. Respondent refers to certain legislative history to argue that petitioners should not be able to opt out of the program to pursue litigation against a manufacturer as that would defeat the Congressional intent of providing immunity to manufacturers of vaccines.  However, respondent has failed to explain how the legislative history of the Vaccine Act can supersede the express language of the Act which allows petitioner to do exactly what she has done in this case and in fact requires that petitioner take the steps of filing a petition and requisite supporting documentation even if the intent is to opt out and pursue tort litigation.

When it passed the Vaccine Act, Congress required that all claims for vaccine injury in the United States be initially brought in the program and filed in the United States Court of Federal Claims.  It did, however, recognize that some petitioners may wish to pursue traditional tort litigation against the manufacturer of a vaccine.  Congress preserved that right while requiring that the case initially be filed in the United States Court of Federal Claims, as this one was, but allowed the petitioner to withdraw the claim  after 240 days if the case had not been resolved by a Special Master by that time, or to reject a judgment of the court and pursue litigation against the manufacturer. In fact the court is required to give notice to petitioners of the right to dismiss after 240 days when the case is not concluded by that time.  While the vast majority of petitioners remain in the program and pursue their claims to conclusion, some elect to pursue litigation against a manufacturer. The petitioner in this case intended to pursue tort litigation but followed the express requirement of the act to first file her petition in this court along with medical records to substantiate her claim of medical injury to her son, which she believed was caused by the Gardasil vaccine.

Petitioner reasonably argues that the meaning of the good faith requirement is well-settled and refers to her belief that the vaccine caused injury to her son—and not her intentions regarding the manner of litigation. *Id*. at 6 (citing *Di Roma v. Sec'y of Health & Hum. Servs*., No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). Petitioner's intention

to file a lawsuit against the vaccine manufacturer in a different forum is consistent with her belief that a vaccine-caused injury has occurred.

For these reasons, the undersigned finds that the petition was filed in good faith.

### B.  Reasonable Basis

In discussing the reasonable basis requirement in *Cottingham* (which involved similar allegations relating to the HPV vaccine), the Federal Circuit stressed the prima facie petition requirements of § 11(c)(1) of the Act. 971 F.3d at 1345-46. Specifically, the petition must be accompanied by an affidavit and supporting documentation showing that the vaccinee:

(1) received a vaccine listed on the Vaccine Injury Table;

(2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;

(3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;

(4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and

(5) has not previously collected an award or settlement of a civil action for damages for the same injury.

*Id*.

Consistent with the above, petitioner has filed contemporaneous and facially trustworthy medical records demonstrating: (1) that G.B. received a covered vaccine; (2) that the vaccine was administered in the United States; (3) that G.B. experienced the symptoms petitioner alleges to constitute a vaccine-caused injury, including muscle fatigue, weight loss, mouth sores, increased saliva secretions, headaches, severe stomach pain and upset stomach, digestive issues, difficulty moving his bowels, paleness, chest pain, bruising, and skin rashes; and (4) that these symptoms persisted for at least six months. Petitioner has also averred that there has been no award or settlement of a civil action for damages for the same injury. Pet. Ex. 1 at 2. Petitioner submitted medical records from various treating physicians and under oath attestations as to the facts of the case, which are summarized above. The Federal Circuit clarified in *James-Cornelius* that medical evidence, as provided in this case, is sufficient as objective evidence to find reasonable basis. *See James-Cornelius,* 984 F.3d 1374 at 1379-81. Additionally, in this case, petitioner submitted an affidavit, which represents direct evidence of the medical symptoms of G.B and is also considered objective evidence. *Id*; Pet. Ex. 8.

In *Thomas* and *Hoover*, two cases cited by petitioner in his reply to the respondent's answer, the petitions were withdrawn following a 240-day notice. *Thomas v. Sec'y of Health & Human Servs.*, No. 20-886V (Fed. Cl. Spec. Mstr. May 17, 2021); *Hoover v. Sec'y of Health &*

*Human Servs.*, No. 20-1394V (Fed. Cl. Spec. Mstr. Nov. 1, 2021). In the present case petitioner did not utilize the 240-day notice mechanism to withdraw pursuant to the deadline set forth on March 29, 2021 and chose instead to file a motion to dismiss on July 24, 2021. (ECF Nos. 24 and 27). In considering the issues in this case the distinction between a 240-day withdrawal and a motion to dismiss to conclude proceedings are not particularly important.

Special Masters can disagree with each other however, when there are two reasoned opinions such as *Thomas* and *Hoover*, provided by petitioner in his Reply, and the opinions address essentially the identical legal argument, it does seem appropriate that Respondent should have drawn those decisions to my attention and indicated whether there was any basis for distinguishing this case. As I can find no basis to disagree with or distinguish those opinions, I join in the conclusions reached by my colleagues in those cases. If Respondent's argument that petitioners should be required to pursue their cases to conclusion in this program was taken to its logical conclusion, such requirement would have the effect of increasing the attorneys' fees and costs to the program.  When the intent is to pursue tort litigation, as permitted by the Act, the decision to opt out at an early time is prudent and preserves the resources of the program without requiring the extensive engagement of the court in analyzing and deciding cases which petitioner intends to pursue in another forum anyway.

As outlined above, other Special Masters have found reasonable basis in cases brought by Mr. Downing involving petitioners who set forth similar facts and opt out of the Vaccine Program in order to pursue a third-party action. *See, e.g., Wagner v. Sec'y of Health & Hum. Servs.,* No. 19-188V, 2021 WL 1120955, at *1 (Fed. Cl. Feb. 11, 2021); *Otto v. Sec'y of Health & Human Servs.*, No. 16-1144V, (Fed. Cl. Spec. Mstr. July 24, 2020); *McElerney v. Sec'y of Health & Human Servs.,* No. 16-1540V, (Fed. Cl. Spec. Mstr. Dec. 15, 2020). In the present case, the petitioner met the minimum requirements of the statute for filing a case in the Vaccine Program in good faith and with  reasonable basis.

**VII.   Attorneys' Fees and Costs**

**a.  Legal Standard**

The Vaccine Act permits an award of reasonable attorneys' fees and costs. §15(e). Section 300aa-15(e)(1) of the Vaccine Act provides that, "[i]f the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." As this case was voluntarily dismissed, petitioner's counsel is still eligible for reasonable attorneys' fees and costs as long as the petition was brought in good faith and with a reasonable basis. As discussed above, I find that the petition was brought in good faith with a reasonable basis.

Petitioners "[bea[r] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable. *Wasson v. Sec'y of Health & Human Servs.,* 24 Cl. Ct. 482, 484 (1993). Counsel must submit fee requests that include contemporaneous and specific

billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Human Servs.,* 85 Fed. CL. 313, 316-18 (2008). Adequate proof of the claimed fees and costs should be presented when the motion is filed. *Id.* at 484 n.1. The special master has the discretion to reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Human Servs.,* 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Human Servs.,* 85 Fed. Cl. 313 (Fed. Cl. 2008), *aff'd* No. 99-537V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

### b.  Attorneys' Fees

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera,* 515 F. 3d at 1348 (quoting *Blum,* 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriquez v. Sec'y of Health & Hum. Servs.,* 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F.3d at 1349).

Further, the Office of Special Masters has adopted the framework developed in *McCulloch* for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.,* No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). Under *McCulloch,* the following factors are "to be considered in determining an appropriate billing rate: the prevailing rate for comparable legal work in the forum of Washington, D.C.; the prevailing rate for cases in the Vaccine Program; the experience of the attorneys in the Vaccine Program; the overall legal experience of the attorneys in the case; and the quality of work performed in vaccine cases." *McCulloch,* 2015 WL 5634323, at 60-61.

Petitioners' requests reimbursement for attorneys' fees in the total amount of $14,502.00 for work performed by attorneys Mr. Andrew Downing and Ms. Courtney Van Cott. Pet. Fees Mot. at 10; Pet. Ex. A. Petitioner requests that her attorney, Mr. Andrew Downing. be reimbursed for the work performed on her case in 2020 and 2021. Specifically, she requests that Mr. Downing be awarded the hourly rate of $385.00 per hour for work performed in 2020 and 2021.  Mr. Downing also requests that he be reimbursed for work performed by attorney, Ms. Courtney Van Cott, at the rate of $275.00 per hour.  Mr. Downing also requests that he be reimbursed for work performed by paralegals, Mr. Robert W. Cain, and Ms. Danielle P. Avery at the paralegal rate of $135.00 per hour. These rates are consistent with what Mr. Downing and Ms. Van Cott, and their paralegals, have previously been awarded for their Vaccine Program work, and I therefore find them reasonable. *See, e.g., Colbath v. Sec'y of Health & Hum. Servs.*, No. 17-599V, 2021 WL 1120986, at *2 (Fed. Cl. Spec. Mstr. Feb. 23, 2021); *Dreyer v. Sec'y of Health & Hum. Servs.*, No. 18-764V, 2019 WL 6138132, at *3 (Fed. Cl. Spec. Mstr. Oct. 29, 2019);  *Antolick v. Sec'y of Health & Hum. Servs.,* No. 16-1460V, 2020 WL 524776, at *4 (Fed. Cl. Jan. 13, 2020).

### c.  Reduction in Billable Hours/Hours Reasonable Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [his] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special masters' reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours).

Petitioner's counsel has provided a breakdown of hours billed. Pet. Ex. A. Based on the "Attorneys' Costs and Fee Details," provided by petitioners' counsel, it appears that Mr. Downing performed a total of 16.50 hours of work on this case between 2020-2021 and Ms. Van Cott performed a total of 9.90 hours of work in this case between 2020-2021. The tasks for which  the attorneys, Mr. Downing and Ms. Van Cott billed are consistent with tasks necessary when pursuing a claim in the Vaccine Program but seem to be at least somewhat excessive if the intention was to dismiss the case in this program and pursue third party litigation. While I recognize that some attorney work is necessary to meet the minimum requirements of the statute and perhaps decide whether to continue in the Program or not, the amount of such attorney time should be constrained when the intent is to withdraw and pursue alternative litigation.

It appears that much of the work was performed by two paralegals, Mr. Robert Cain and Ms. Danielle Avery, totaling 40.1 hours (20.80 hours for Mr. Cain, and 19.40 hours for Ms. Avery). These hours are billed at a lower hourly rate than attorneys' time.  However, I find that counsel included entries that are duplicative and excessive due to the paralegals receiving/reviewing/analyzing medical records. Pet. Ex. A at 5-13. The paralegals billed for the, "review" and "analysis" of the same medical records, and such billing accounted for 12.6 total hours (8.1 hours for Mr. Cain, and 4.5 hours for Ms. Avery). Such billing is duplicative and excessive for the amount of medical records submitted in the above captioned case. While analysis by a paralegal and an attorney may be appropriate in cases being pursued in the program, when the intent was to dismiss at an early stage such work should have been minimized. Additionally, approximately four months elapsed between the 240-day notice and petitioner's motion to dismiss, in which two motions for extension of time were filed (ECF Nos. 25 and 26) and no additional medical records were submitted.

As stated by both the respondent and petitioner, prior to a victim being able to pursue a vaccine manufacturer directly, the victim must first submit a claim to the Vaccine Injury Compensation Program. Pet. Reply at 4; Resp. Response at 10; 42 U.S.C. § 300aa-11(a)(2). Additionally, petitioner should not bill the program for work that was directed toward the outside tort litigation. In particular, the second billing record indicates, "follow up call with client; additional questions; Statute of Limitations; commencing claim; opting out," and the seventh billing record indicates, "[c]all with client re: additional questions; VICP case status; Merck." Pet. Ex. A at 1.

The court acknowledges that the Vaccine Act permits petitioners to exit the program in order to bring a civil action outside of the program, but caution petitioners' attorney in the future to minimize billing for work exclusively or primarily directed toward pursuing the outside civil

action while completing the substantive work to establish reasonable basis during the pendency of this case.  While it seems likely that petitioner had decided at an early stage to join the Gardasil litigation against Merck, I agree with petitioner that most of the work done for this case was warranted and reasonable because petitioner's abandonment of her claim was not inevitable, and the Act required that medical records and supportive documentation be initially filed in the program.  I do, however, think that petitioners intending to exit the program to pursue third party litigation should attempt to minimize the time billed for analysis of the records filed which ultimately are directed toward proof of a case in an alternative forum.

In light of the excessive review and analysis of the medical records and the early mention of opting out for outside civil action, I find that a $2,000 reduction to the attorneys' fees billed in petitioner's first motion is appropriate. Therefore, petitioners are awarded $12,502.00.

### d.  Attorneys' Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. *See Perreira v. Sec'y of Health & Human Servs.,* 27 Fed. Cl. 29, 34 (Fed. Cl. 1992).  In this case, petitioner is requesting a total of $431.00 in attorneys' costs. The costs included the filing fee for the petition, cost to obtain medical records, and postage costs. Pet. Ex. A at 14. Petitioner has provided adequate documentation supporting these costs and they are reasonable in the undersigned's experience will be awarded in full.

### VIII.   Conclusion

In conclusion with the foregoing, petitioners' motion for attorneys' fees and costs are hereby **GRANTED**, and petitioner is awarded $12,933.00, representing $12,502.00 in attorneys' fees and $431.00 in attorneys' costs.

| | |
|---|---|
| Attorneys' Fees Requested | $14,502.00 |
| (Reduction of Fees) | - ($2,000) |
| **Total Attorneys' Fees Awarded** | **$12,502.00** |
| | |
| Attorneys' Costs Requested | $431.00 |
| (Reduction of Costs) | ---- |
| **Total Attorneys' Costs Awarded** | **$431.00** |
| | |
| **Total Attorneys' Fees and Costs** | **$12,933.00** |

**Accordingly, I award a lump sum in the amount of $12,933.00, representing reimbursement for petitioners' attorneys' fees and costs, in the form of a check payable to petitioners' and their attorney, Mr. Andrew Downing.**

**IT IS SO ORDERED.**

s/Thomas L. Gowen
Thomas L. Gowen
Special Master